[No. F020703. Fifth Dist. Feb. 27, 1995.]

BONO ENTERPRISES, INC., Plaintiff and Appellant, v.
VICTORIA L. BRADSHAW, as Labor Commissioner, etc., et al.,
Defendants and Respondents.

## COUNSEL

Jory, Peterson & Sagaser, Sagaser, Hansen & Franson and Howard A. Sagaser for Plaintiff and Appellant.

Douglas G. Nareau for Defendants and Respondents.

## OPINION

**STONE (W. A.), Acting P. J.**—Every employer is required to pay to each employee not less than the applicable minimum wage for all hours worked. (Cal. Code Regs., tit. 8, § 11010, subd. (4)(B).) Industrial Welfare Commission (IWC) Order No. 1-89,[1] regulating wages, hours, and working conditions in the manufacturing industry in the State of California defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (IWC Order No. 1-89, subd. 2(g).) An employee is entitled to compensation for meal periods as "hours worked" unless the employee is relieved of all duty during the meal period. (IWC Order No. 1-89, subd. 11.)

It is the policy of respondent, the Department of Industrial Relations, Division of Labor Standards Enforcement (DLSE), based upon the definition of "hours worked," to require an employer to pay an employee if the employer requires the employee to remain on the employer's premises during the lunch hour. According to the Commissioner of Labor (Commissioner), an employee remains subject to the control of his or her employer and is not relieved of all duty if he or she is precluded from leaving the workplace during the meal period.

Appellant, Bono Enterprises, Inc., doing business as American Temporary Services (ATS), claims the Commissioner's enforcement policy based upon the foregoing interpretation is illegal and tantamount to an "underground regulation" which violates due process because the language of IWC Order No. 1-89 fails to provide adequate notice to employers of its meaning and effect. ATS appeals from the trial court's judgment denying its request for declaratory and injunctive relief to enjoin statewide enforcement of the policy.

---

[1]IWC Order No. 1-89 is codified in title 8 of the California Code of Regulations, section 11010, with corresponding paragraphs and subsections.

## BACKGROUND

ATS provides a temporary work force to approximately 1,000 employers in several counties in the state. One of its customers, Procter & Gamble, uses ATS workers at its manufacturing plant in Modesto. Temporary workers are not given security clearance at the Modesto plant and must remain on the plant premises during their 30-minute lunch period unless they make prior arrangements to reenter the plant after leaving for lunch. The workers are relieved of all work duties during their lunch period and an on-site cafeteria as well as relaxation facilities are available for their use during lunch periods.

In 1989 several ATS employees filed complaints with the Commissioner claiming nonpayment of wages for lunch periods during which they were restricted to the Procter & Gamble premises. According to the employee complaints, they "remained under the direction and control of ATS" and were entitled to compensation for hours worked.

While the complaints were pending before the Commissioner, ATS filed a complaint for declaratory and injunctive relief in Fresno County Superior Court[2] to enjoin the Commissioner from enforcing the policy requiring compensation for meal periods during which employees are precluded from leaving the employer's facility. The superior court declined to proceed while the administrative process was pending.

The Commissioner issued a ruling in favor of the workers. ATS requested a trial de novo in Fresno County Municipal Court pursuant to Labor Code section 98.2[3] challenging the Commissioner's ruling. The municipal court ruled in favor of ATS, finding IWC Order No. 1-89 did not require ATS to compensate off-duty employees during their 30-minute lunch break even though the employees were restricted to the Proctor & Gamble premises. The judgment was affirmed by the superior court, appellate department.

Its interpretation of IWC Order No. 1-89 having prevailed in the Procter & Gamble dispute, ATS pursued its superior court action against the Commissioner to enjoin enforcement of the Commissioner's policy on a statewide basis. A trial was held on the validity of the Commissioner's interpretation of the regulations. The Commissioner claimed there was no case or controversy since there were no pending worker complaints. The trial court found

---

[2]The principal offices of ATS are in Fresno.

[3]Labor Code section 98.2 provides in relevant part: "(a) Within 10 days after service of notice of an order, decision, or award the parties may seek review by filing an appeal to the justice, municipal, or superior court, in accordance with the appropriate rules of jurisdiction, where the appeal shall be heard de novo."

the issue was not "moot" because ATS hires workers in other counties "that may very well run afoul of the interpretation by the department" and "the department intends to apply its interpretation to all other counties except Fresno." However, the court declined to issue injunctive relief, and found the Commissioner's interpretation of the applicable regulations found in IWC Order No. 1-89 to be valid and reasonable.

ATS appeals.

## DISCUSSION

### I. *The Relevant Language*

Subdivision 4(B) of IWC Order No. 1-89 provides: "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage *for all hours worked* in the payroll period . . . ." (Italics added.)

Subdivision 2(G) of IWC Order No. 1-89 defines "hours worked" as: "[t]he time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

Subdivision 11(A) of IWC Order No. 1-89 sets forth the policy regarding meal periods: "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than thirty (30) minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of employer and employee. *Unless the employee is relieved of all duty during a thirty (30) minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked.* An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to." (Italics added.)

### II. *Guiding Principles and Standards of Review*

The interpretation of a regulation is a question of law for the courts to decide. (*Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93 [130 Cal.Rptr. 321, 550 P.2d 593].) Although there are many rules of construction which provide guidance when the meaning of a regulation is uncertain, (see 7 Witkin, Summary of Cal. Law (9th ed. 1990) Constitutional Law, § 94, pp. 146-147 for a list of some such rules), the

primary rule is to respect the subject matter expertise of the agency charged with enforcing the regulation and to defer to that agency's interpretation unless it is clearly erroneous or unauthorized. (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 111 [172 Cal.Rptr. 194, 624 P.2d 244]; *Lusardi Construction Co.* v. *California Occupational Safety & Health Appeals Bd.* (1991) 1 Cal.App.4th 639, 645 [2 Cal.Rptr.2d 297].)

■ Labor Code sections 61 and 1193.5 specifically empower the DLSE to interpret and enforce IWC Orders with the primary objective of protecting workers. (*Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 690, 724 [166 Cal.Rptr. 331, 613 P.2d 579]; *Skyline Homes Inc.* v. *Department of Industrial Relations* (1985) 165 Cal.App.3d 239, 253 [211 Cal.Rptr. 792].) IWC orders must be liberally construed to accomplish this primary objective. (*Ibid.*) A reviewing court may not substitute its judgment for that of the agency on matters within the agency's discretion. (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd., supra,* 29 Cal.3d at p. 111.)

Thus, this court must determine whether the Commissioner's interpretation of IWC Order No. 1-89 is clearly erroneous or whether it is a reasonable construction of regulatory language which is designed to protect workers in the manufacturing industry.

III. *Validity of Commissioner's Interpretation*

A. *Common Meaning of Language Used in IWC Order No. 1-89*

■ ATS contends the enforcement policy adopted by the DLSE is invalid because the regulations regarding hours worked and meal periods do not clearly require compensation for meal periods if the employee is required to remain on the employer's premises. According to ATS, the enforcement policy would be reasonable only if there was express language which provided that employers must compensate employees for meal periods if the employees are required to remain on the employer's premises.

While we agree that an employer must be afforded adequate notice of regulatory requirements, the DLSE's enforcement policy is not rendered clearly erroneous merely because the regulation could be worded more explicitly. Moreover, this argument assumes the language of the regulation is unclear.

According to the definition contained in IWC Order No. 1-89, subdivision 2, "hours worked" means the time during which an employee is *"subject to*

*the control* of an employer . . . ." (Italics added.) This language is neither vague nor unclear. According to 3 Oxford English Dictionary (2d ed. 1989), page 853, to "control" means "[t]o exercise restraint or direction upon the free action of; to hold sway over, exercise power or authority over; to dominate, command." Webster's New World Dictionary (3d college ed. 1988) at page 303 defines "control" as "the exercise of authority over; direct; command . . . ." These definitions are not obscure; they are meanings commonly attributed to the words chosen by the IWC to communicate the obvious—an employer must compensate an employee for the time during which the employer controls the employee.

When an employer directs, commands or restrains an employee from leaving the work place during his or her lunch hour and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control. According to IWC Order No. 1-89, that employee must be paid.

The language of IWC Order No. 1-89, subdivision 11(A) is not inconsistent with this interpretation: "Unless the employee is relieved of all duty during a thirty (30) minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. . . ."

The "Statement as to the Basis" upon which IWC Order No. 1-89 is predicated states "[a] 'duty free' meal period is necessary for the welfare of employees. . . ." Again, we refer to common definitions to find the meaning of the term "duty" to determine whether the enforcement order is a reasonable attempt to protect worker welfare. Webster's New World Dictionary, *supra*, page 423, defines "duty" as "any action, task, etc., required by or relating to one's occupation or position . . . ," synonymous with "obligation" and "responsibility."

These definitions are consistent with the conclusion that an employee who has a duty or obligation to remain on the premises during meal periods is not "free of all duty." It is not unreasonable for the DLSE to determine, as a matter of policy, that an employee continues to be subject to employer control if the employer requires the employee to remain at the worksite during meal periods.

### B. *Applicability of Federal Guidelines*

ATS claims the enforcement policy is clearly erroneous because federal guidelines do not require an employee to be paid for mandatory on-site meal periods. ■ We may look to federal authorities construing parallel federal statutes for guidance. (*Monzon* v. *Schaefer Ambulance Service, Inc.*

(1990) 224 Cal.App.3d 16, 30-31 [273 Cal.Rptr. 615].) However, the state is empowered to go beyond the federal regulations in adopting protective regulations for the benefit of workers. (*Industrial Welfare Com.* v. *Superior Court, supra,* 27 Cal.3d at p. 727.) The federal authorities are of little if any assistance in construing state regulations which provide greater protection to workers.

■ The federal Fair Labor Standards Act (FLSA) does not include a definition of "hours worked." (29 C.F.R. § 785.6 (1994).) Instead, it recites "Principles for Determination," including examples from cases which have construed the term: "The United States Supreme Court originally stated that employees subject to the act must be paid for all time spent in 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer of his business.' (Citation.) Subsequently, the Court ruled that there need be no exertion at all and that all hours are hours worked which the employee is required to give his employer, that 'an employer, if he chooses, may hire a man to do nothing, or to do nothing but wait for something to happen. Refraining from other activity often is a factor of instant readiness to serve, and idleness plays a part in all employments in a stand-by capacity. Readiness to serve may be hired, quite as much as service itself, and time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer.' (Citations.) *The workweek ordinarily includes 'all the time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place'*. (Citation.)" (29 C.F.R. § 785.7 (1994), italics added.)

Off-duty hours, "periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes" are not considered hours worked. (29 C.F.R. § 785.16 (1994).) However, under the FLSA, "an employee is not completely relieved from duty and cannot use the time effectively for his own purposes unless he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived." (*Ibid.*)

The question of whether an employee is off duty depends upon whether the time is "long enough to enable him to use the time effectively for his own purposes." This, in turn, depends upon all of the facts and circumstances of the case. (29 C.F.R. § 785.16 (1994).)

These provisions of the FLSA are entirely consistent with the DLSE's enforcement policy. The difference arises in the context of regulating meal periods.

"Bona fide" meal periods are not considered hours worked under the FLSA. "The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating." (29 C.F.R. § 785.19(a) (1994).)

FLSA regulations specifically state, "[i]t is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period." (29 C.F.R. § 785.19(b) (1994).)

IWC Order No. 1-89 has no comparable language. Nevertheless, ATS claims this language must be read into IWC Order No. 1-89 because the IWC intends that state and federal law should be consistent with respect to issues relating to working time.

In support of its claim that the IWC intends Order No. 1-89 to have the same meaning as the FLSA regulation regarding on-site meal periods, ATS asks this court to take judicial notice of amendments to other IWC Orders. Attached to its reply brief is IWC Order No. 5-89 regulating the public housekeeping industry, in which subdivision 2(H) now provides that the term "hours worked" is to be interpreted in accordance with the FLSA provisions regarding work hours.

IWC Order No. 5-89 proves only that the IWC, after hearing and consideration, has decided to adopt the federal guidelines with respect to workers employed in the housekeeping industry. There has been no comparable amendment of the regulations applicable to workers employed in the manufacturing industry. The fact that IWC did not amend the language of Order No. 1-89, when it clearly could have done so, indicates DLSE's interpretation is consistent with IWC intent. (See *Monzon* v. *Schaefer Ambulance Service, Inc.*, *supra*, 224 Cal.App.3d 16, 35.)

ATS is asking this court to engage in judicial legislation or regulation, and in effect to amend IWC Order No. 1-89 to state that its terms should be interpreted in accordance with federal guidelines. We decline this invitation. This court is not charged with declaring the intent of the IWC with respect to regulating the manufacturing industry. The Legislature has given the DLSE the authority to interpret the intent of IWC orders and to administer and enforce those orders. (*Skyline Homes Inc.* v. *Department of Industrial Relations*, *supra*, 165 Cal.App.3d at pp. 239, 249.) Since the DLSE's interpretation of Order No. 1-89 is not clearly erroneous, its enforcement policy must

be upheld. (*Monzon* v. *Schaefer Ambulance Service, Inc., supra*, 224 Cal.App.3d at p. 30.)

ATS cites no authority to support the proposition that an interpretation of state regulation is clearly erroneous if it differs from a parallel federal guideline. Nor has ATS cited law which requires the state agency charged with enforcing a state regulation to interpret and enforce state law the same as a similar federal agency interprets and enforces federal law. The DLSE is free to interpret IWC regulations in a manner which provides greater protection to workers. (*Industrial Welfare Com.* v. *Superior Court, supra*, 27 Cal.3d at p. 727.)

### C. *Interpretation or Regulation*

██ ATS claims the DLSE's enforcement policy is not merely a matter of interpretation, but is instead a de facto new regulation promulgated without compliance with the Administrative Procedures Act (APA). (See Gov. Code, § 11340 et seq.)

The trial court found the DLSE's interpretation of IWC Order No. 1-89 was reasonable. Implicit in this finding is the conclusion that the enforcement policy was a question of interpretation, not the promulgation of a new regulation. (*Skyline Homes Inc.* v. *Department of Industrial Relations, supra*, 165 Cal.App.3d at p. 253.) We agree.

The Commissioner must have the discretion when ruling upon an employee's complaint to determine whether the employee was indeed subject to the employer's control and entitled to compensation because of the requirement that the employee remain at the worksite. The test of control necessarily involves factual determinations which must first be decided by the Commissioner on a case-by-case basis. We cannot say in the abstract and as a matter of law the Commissioner is without authority to make such a finding.[4]

Both parties cite *Madera Police Officer's Assn.* v. *City of Madera* (1984) 36 Cal.3d 403 [204 Cal.Rptr. 422, 682 P.2d 1087], and note that court engaged in a two-step analysis to determine whether officers were entitled to payment for overtime hours as a result of limitations placed on their mealtime hours: "First, are the restrictions primarily directed toward the fulfillment of the employer's requirements and policies? Second, are the employees substantially restricted . . . , so as to be unable to attend to private

---

[4]We note that the statement of decision in the municipal court proceedings indicates the workers employed at Procter & Gamble could leave the worksite if they made prior arrangements to reenter the plant. Thus, those employees were not restricted to the work site for meal periods and, therefore, did not remain subject to the employer's control. Those facts, not before us in this action, are extremely significant.

pursuits?" (*Madera Police Officer's Assn.* v. *City of Madera, supra,* 36 Cal.3d at p. 410.)

We decline to issue a broad declaration regarding the validity of a policy which appears on its face to be reasonable. Absent evidence or facts to the contrary, we must assume decisions are fairly made on a case-by-case basis.

In summary, DLSE's enforcement policy of requiring an employer to pay an employee for meal periods during which the employee is precluded from leaving the worksite is consistent with the language of IWC Order No. 1-89. The enforcement policy is not invalid merely because the language of Order No. 1-89 is susceptible to different interpretations. Nor is it clearly erroneous because parallel federal wage and hour guidelines are more favorable to the employer's position. Finally, the language of IWC Order No. 1-89, subdivision 4, defining hours worked, is sufficiently clear to place employers on notice that an employee must be paid for all hours during which he or she is subject to the employer's control, including meal periods.

## DISPOSITION

Judgment affirmed. Costs on appeal to respondents.

Thaxter, J., and Harris, J., concurred.