167 Cal.App.4th 1278 (2008)
FRED BRINKLEY, Plaintiff and Appellant,
v.
PUBLIC STORAGE, INC., Defendant and Respondent.
No. B200513.
Court of Appeals of California, Second District, Division Three.
October 28, 2008.
As modified November 5, 2008.
*1280 Law Office of Joseph Antonelli, Joseph Antonelli, Janelle C. Carney; Law Offices of Kevin T. Barnes, Kevin T. Barnes and Gregg Lander for Plaintiff and Appellant.
Freeman, Freeman & Smiley, Bradley D. Ross and Azadeh Allayee for Defendant and Respondent.

OPINION
KITCHING, J.

INTRODUCTION
Plaintiff asserts class action and individual claims for violations of the Labor Code. He alleges that defendant, his former employer, provided paystubs containing misstatements in violation of Labor Code section 226.[1] An employer, however, cannot be liable for misstatements on pay stubs unless it knowingly and intentionally makes such misstatements and an employee suffers injury as a result. Plaintiff cannot prove either element in this case.
Plaintiff also asserts causes of action based on section 226.7 on the ground that defendant failed to ensure that plaintiff and other class members took all meal periods and rest periods they were entitled to take. California law, *1281 however, only requires that employers make available such periods, which defendant did here.
We affirm the trial court's order granting defendant summary adjudication with respect to plaintiff's section 226 and section 226.7 causes of action.

FACTUAL AND PROCEDURAL BACKGROUND

1. Plaintiff's Employment at Public Storage, Inc.

Plaintiff and appellant Fred Brinkley worked as a property manager for defendant and respondent Public Storage, Inc., for a little more than four months before defendant terminated his employment. Plaintiff was a non-exempt employee.

2. Pay Stubs

Plaintiff and other property managers received paychecks from defendant twice per month. The paychecks included a pay stub called an "Earnings Statement," which stated the hours worked, gross pay, pay rate, taxes withheld and other information regarding the employee's compensation. The pay stubs listed three categories of pay: regular earnings, overtime earnings and "Assoc Mileage," i.e., associated mileage.
Plaintiff and other property managers were paid $0.19 per hour worked for associated mileage, regardless of whether they traveled for work purposes and, if so, the number of miles they traveled. Additionally, managers received actual reimbursement of all mileage expenses incurred in excess of 20 miles for travel to specified meetings.
Certain of plaintiff's pay stubs erroneously stated $11.20 per hour as the rate for associated mileage instead of the actual rate of $0.19 per hour.[2] The number of associated mileage hours and the dollar amount paid for associated mileage, however, were accurately stated in these pay stubs.
*1282 An outside payroll service, ADP, Inc. (ADP), prepared defendant's paychecks and pay stubs based on information provided by defendant. After plaintiff commenced this action, ADP corrected the rate for associated mileage stated on the pay stubs pursuant to defendant's instructions. Defendant claims that it did not know of this error prior to the lawsuit and that the error was inadvertent.

3. Meal Periods

Defendant had a policy requiring all employees to take a 30-minute meal period whenever an employee worked at least five hours in a shift. Further, employees were required to sign in and out during their meal break, but from time to time did not do so. Plaintiff understood that defendant's policy required him and all hourly employees to take a meal period. James Bottini and Cindy Kohler, two former managers who filed declarations opposing defendant's motion for summary adjudication, also understood this policy. Plaintiff "[g]enerally" took a meal period "at some point."
Defendant's senior vice-president Candace Krol testified that the company has reprimanded employees for working during lunch. Ms. Krol was unaware of any employee being paid one hour of regular wages for failing to take a meal break.
Plaintiff, Bottini and Kohler claim that they regularly worked shifts longer than six hours and rarely took an uninterrupted (duty-free) lunch within the first five hours of their shift. Plaintiff's timecards indicate that at times plaintiff did not take a meal break until more than five or six hours after his shift commenced.

4. Rest Periods

Defendant's employee handbook states that employees may take two 10-minute rest periods each day. It further states that such periods should be scheduled, insofar as possible, midway through the morning and midway through the afternoon. Plaintiff received this handbook when he began his employment with defendant. Defendant advised plaintiff and other employees at a district meeting that they were required to take rest and lunch breaks. Plaintiff claims he rarely took rest breaks in the middle of any four-hour shift.

5. Plaintiff's Allegations

Although his first amended complaint sets forth six causes of action, plaintiff only appeals from the trial court's summary adjudication in defendant's favor of plaintiff's third, fifth and sixth causes of action. In his third *1283 cause of action, plaintiff alleges that defendant violated section 226 by failing to provide plaintiff and the class he represents an accurate accounting of earned wages. In his fifth cause of action, plaintiff alleges that defendant violated section 226.7 by failing to provide plaintiff and the class he represents meal periods as required by the statute. In his sixth cause of action, plaintiff alleges that defendant violated section 226.7 by failing to provide plaintiff and the class he represents rest periods as required by the statute.

6. Class Certification

On November 2, 2006, the court entered an order granting plaintiff's class certification with respect to specified subclasses relating to plaintiff's pay stub and meal period claims. The pay stub subclass included all non-exempt property managers who "received wage statements containing inaccurate mileage reimbursement rates and hours for reimbursable miles driven while working for" defendant.
The meal period subclass included all non-exempt property managers who "(1) worked a period of more than 6 hours (a) without a meal period of not less than 30 minutes; or (b) without a meal period within the first five (5) hours of work or (2) worked a period of more than 10 hours per day (i) without being provided a second meal period of not less than 30 minutes, (ii) without a meal period within the second five (5) hours of work except if (A) the total hours worked were not more than 12 hours per day, (B) the second meal period except [sic] was waived by mutual consent of Public Storage, Inc. and the employee, and (C) if the first meal period was not waived."
The court did not certify a subclass of employees in connection with plaintiff's rest period claims.

7. Motion for Summary Judgment/Summary Adjudication

On March 13, 2007, defendant filed a motion for summary judgment, or in the alternative, for summary adjudication. On June 22, 2007, the court denied defendant's motion for summary judgment and granted, in part, its motion for summary adjudication. The court ruled that defendant was entitled to judgment as a matter of law with respect to plaintiff's third, fifth and sixth causes of action. Plaintiff filed a timely appeal from this order.[3]

STANDARD OF REVIEW
The standard of review for an order granting a motion for summary adjudication is de novo. (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th *1284 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493] (Aguilar).) We must independently review defendant's motion as if we were standing in the shoes of the trial court.
A defendant moving for summary adjudication of a cause of action bears the burden of persuasion that there is no triable issue of material fact and that he or she is entitled to prevail on the cause of action as a matter of law. (Aguilar, supra, 25 Cal.4th at p. 850 (Aguilar) [rules governing summary judgment motions]; Heredia v. Farmers Ins. Exchange (1991) 228 Cal.App.3d 1345, 1353 [279 Cal.Rptr. 511] [motion for summary adjudication governed by rules for motion for summary judgment].) A moving defendant must show that either one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2).)
The moving defendant bears the initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact. This burden is met by the production of evidence. If the defendant meets his or her burden of production, the burden shifts to the plaintiff to produce evidence showing the existence of a triable issue of material fact. (Aguilar, supra, 25 Cal.4th at p. 850.)

ISSUES
1. Whether defendant is entitled to judgment as a matter of law with respect to plaintiff's section 226 cause of action.
2. Whether defendant is entitled to judgment as a matter of law with respect to plaintiff's section 226.7 cause of action arising from defendant's alleged failure to provide meal periods.
3. Whether defendant is entitled to judgment as a matter of law with respect to plaintiff's section 226.7 cause of action arising from defendant's alleged failure to provide rest periods.

DISCUSSION

1. Plaintiff Did Not Violate Section 226 Because Defendant Did Not Knowingly and Intentionally Violate the Statute and Because Plaintiff and Class Members Did Not Suffer Injury

(1) Plaintiff claims that defendant violated section 226, subdivision (a), which requires employers to furnish employees with certain information in *1285 writing at the time of each payment of wages, including "(1) gross wages earned, (2) total hours worked by the employee . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Plaintiff alleges that defendant violated this statute because certain pay stubs indicated that the associated mileage earnings rate was $11.20 per hour instead of $0.19 per hour.[4]
(2) Section 226, subdivision (e) provides that an employee "suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a)" is entitled to recover the greater of actual damages or specified statutory penalties. The trial court found that defendant did not knowingly and intentionally violate section 226, subdivision (a). We agree.
Defendant met its burden of production by filing a declaration stating that the misstatement of the associated mileage rate was inadvertent and, when discovered, corrected. This evidence showed that plaintiff could not establish an essential element of his claim, namely that defendant intentionally and knowingly failed to provide required information on its pay stubs. The burden of production thus shifted to plaintiff. Plaintiff, however, produced no evidence of knowing or intentional conduct by defendant.
The court has discretion to deny summary adjudication of a cause of action where a material fact is a moving party's state of mind, or lack thereof, and that fact is sought to be established solely by the moving party's declaration. (Code Civ. Proc., § 437c, subd. (e).) Here, however, there are no facts or circumstances that would justify exercising such discretion. Defendant had no reason to overstate the associated mileage rate and did not benefit from this misstatement.
In addition, plaintiff cannot show that he or other pay stub subclass members suffered any injury. This, too, is an essential element of plaintiff's third cause of action.
Defendant produced evidence showing that the error in the pay stubs did not result in the loss of pay. Defendant further showed that the pay stubs *1286 contained accurate information about gross earnings relating to associated mileage and the total number of associated mileage hours. Plaintiff, however, was unable to produce any evidence showing that he or others sustained any injuries as a result of the mistakes in their pay stubs.
(3) Plaintiff argues that the receipt of an inaccurate pay stub ipso facto constitutes injury within the meaning of section 226, subdivision (e). This interpretation, however, renders the words "suffering injury" surplusage and meaningless. Such an interpretation is disfavored. (Jones v. The Lodge at Torrey Pines Partnership (2008) 42 Cal.4th 1158, 1184 [72 Cal.Rptr.3d 624, 177 P.3d 232].) We hold that section 226 means what it says: a plaintiff must actually suffer injury to recover damages or statutory penalties.
The present case is distinguishable from Wang v. Chinese Daily News, Inc. (C.D.Cal. 2006) 435 F.Supp.2d 1042. In Wang, the pay stubs stated that the employees worked 86.66 hours regardless of the number of hours actually worked, the length of the pay period, or the number of workdays in the pay period. This caused the employees to suffer injury because they might not be paid for overtime work to which they were entitled and they had no way of challenging the overtime rate paid by the employer. (Id. at p. 1050.) Here, by contrast, plaintiff was not underpaid or given insufficient information to challenge the payments he received. This inadvertent technical violation of section 226 caused no resulting damages.
Finally, plaintiff argues that even if he cannot prove injury, the trial court erred in granting summary adjudication on the third cause of action because he is entitled to injunctive relief. Plaintiff, however, did not pray for injunctive relief in his first amended complaint. We cannot consider plaintiff's claim for injunctive relief because the issues raised by a motion for summary adjudication are framed by the pleadings. (See Distefano v. Forester (2001) 85 Cal.App.4th 1249, 1264-1265 [102 Cal.Rptr.2d 813].) It is undisputed, moreover, that defendant has corrected the error in the pay stubs. Accordingly, there are no grounds for injunctive relief.

2. Defendant Did Not Violate Section 226.7 Because Defendant Made Meal Periods Available

A. Meal Periods Need Not Be Provided Within the First Five Hours of the Shift

(4) Section 226.7, subdivision (a) provides that "[n]o employer shall require any employee to work during any meal . . . period mandated by an *1287 applicable order of the Industrial Welfare Commission." The applicable IWC (Industrial Welfare Commission) wage order, No. 4-2001, provides: "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee." (Cal. Code Regs., tit. 8, § 11040, subd. 11(A).) If an employer fails to provide an employee with a meal period in accordance with Wage Order No. 4-2001, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal . . . period is not provided." (§ 226.7, subd. (b).)
Section 512, subdivision (a) provides: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee."
Plaintiff argues that California law requires defendant to provide meal periods within the first five hours of a shift. We disagree. Nothing in the applicable statutes or wage order supports plaintiff's position.
Plaintiff's reliance on Murphy v. Kenneth Cole Productions, Inc. (2007) 40 Cal.4th 1094 [56 Cal.Rptr.3d 880, 155 P.3d 284] (Murphy) is unpersuasive. In Murphy, the court held that "[p]ursuant to IWC wage orders, employees are entitled to an unpaid 30-minute, duty-free meal period after working for five hours . . . ." (Id. at p. 1104, italics added.) The court did not hold that a meal period must be provided within the first five hours.

B. Defendant Must Provide Meal Periods But Need Not Ensure That They Are Actually Taken

Plaintiff argues that California law requires that employers not only provide an opportunity for employees to take meal breaks, they must ensure that employees actually take such breaks. We reject that argument.
Section 226.7, subdivision (b) and section 512 both state that employers must provide employees with meal periods under certain circumstances. The court in Brown v. Federal Express Corp. (C.D.Cal. 2008) 249 F.R.D. 580 (Brown) dealt with the same statutes. In that case, the plaintiffs contended, as *1288 plaintiff does here, that an employer must ensure that employees actually take their meal breaks. The court rejected the plaintiffs' claims and noted, "[t]he word `provide' means `to supply or make available.' Merriam Webster's Collegiate Dictionary 937 (10th ed.2002). It does not suggest any obligation to ensure that employees take advantage of what is made available to them." (Brown, at p. 585.)
In Cicairos v. Summit Logistics, Inc. (2005) 133 Cal.App.4th 949 [35 Cal.Rptr.3d 243] (Cicairos), the issue was whether an employer of truckdrivers had violated section 512, subdivision (a) and an IWC wage order relating to meal periods. The employer argued that since the truckdrivers were constantly on the road, the employer could not regulate the meal periods and left the decision to take meal periods to the driver's discretion. However, the evidence showed that the employer managed and scheduled the drivers in such a way that prevented the drivers from taking their meal periods. The court rejected the employer's argument and found that the employer had "`an affirmative obligation to ensure that workers are actually relieved of all duty,'" so that it was possible for the drivers to have a meal. (Cicairos, at p. 962.) Notably, the Cicairos court did not find that the employer had to ensure that employees actually took the meal period.
In fact, the obligation to affirmatively ensure that workers are relieved of all duty is consistent with the rule requiring employers to provide a meal break. (White v. Starbucks Corp. (N.D.Cal. 2007) 497 F.Supp.2d 1080, 1089 (White) [interpreting Cicairos].)[5] In White, the court rejected the plaintiff's argument under sections 226.7 and 512 that employers "must affirmatively enforce the meal break requirements." (White, at p. 1088.) The court noted that it would be impossible for employers with large workforces to enforce such meal breaks. (Ibid.) It further stated that "employees would be able to manipulate the process and manufacture claims by skipping breaks or taking breaks of fewer than 30 minutes, entitling them to compensation of one hour of pay for each violation.[[6]] This cannot have been the intent of the California Legislature, and the court declines to find a rule that would create such perverse and incoherent incentives." (497 F.Supp.2d at p. 1089.) We agree with this analysis.
*1289 (5) Plaintiff relies on Wage Order No. 4-2001, which states that no employer shall employ any person for a work period of more than five hours "without a meal period of not less than 30 minutes." (Cal. Code Regs., tit. 8, § 11040, subd. 11(A).) This language, however, "is also consistent with an obligation to provide a meal break, rather than to ensure that employees cease working during that time." (Brown, supra, 249 F.R.D. at p. 585.) The interest protected by the meal period provisions of sections 226.7 and 512 is the right of employees to be free of the employer's control during the meal period. (See Murphy, supra, 40 Cal.4th at p. 1104.) The meal period laws do not obligate employees to take meal periods or employers to ensure that meal periods are taken.
In the present case, defendant produced substantial evidence that the employer provided meal periods to plaintiff and other meal period subclass members. Defendant showed that (1) defendant had a written policy providing for meal periods; (2) plaintiff and other managers were aware of this policy; (3) defendant reprimanded employees for not taking meal periods; and (4) defendant advised plaintiff and others at a meeting that they were required to take lunch and rest breaks. Defendant also produced 21 declarations of managers who worked for defendant. Each of these managers stated that they were allowed to take meal periods at their own discretion.
Defendant met its burden of production with respect to the meal period cause of action. The burden of production thus shifted to plaintiff. Plaintiff, however, produced no admissible evidence that he or other meal period subclass members were denied an opportunity to take meal periods. Although plaintiff claims that he and other non-exempt employees at times missed meal breaks, plaintiff did not produce evidence that he or other employees were denied an opportunity to take them.
Plaintiff claims on appeal that he and other employees were not allowed to leave the premises or lock the office during their meal periods. Such meal periods, plaintiff contends, were effectively "on duty," and thus entitled employees to one hour of wages per meal period. (See Bono Enterprises, Inc. v. Bradshaw (1995) 32 Cal.App.4th 968, 975 [38 Cal.Rptr.2d 549], disapproved on other grounds in Tidewater Marine Western, Inc. v. Bradshaw (1996) 14 Cal.4th 557, 574 [59 Cal.Rptr.2d 186, 927 P.2d 296].) Plaintiff, however, did not raise these facts or this argument in his brief or separate statement opposing defendant's motion for summary adjudication. We therefore deem the argument waived. (City of San Diego v. Rider (1996) 47 Cal.App.4th 1473, 1493 [55 Cal.Rptr.2d 422].)

*1290 3. Defendant Did Not Violate Section 226.7 Because Defendant Made Rest Periods Available

California law prohibits employers from requiring employees to work during any rest period mandated by an applicable IWC wage order. (§ 226.7, subd. (a).) Wage Order No. 4-2001 provides: "Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." (Cal. Code Regs., tit. 8, § 11040, subd. 12(A).)
(6) California law does not require an employer to ensure that employees take rest periods. An employer need only make rest periods available. (White, supra, 497 F.Supp.2d at p. 1086.)
Defendant produced evidence showing (1) defendant had a written policy permitting employees to take rest periods in substantial compliance with Wage Order No. 4-2001; (2) plaintiff received a copy of this policy; and (3) defendant advised plaintiff and other employees at a meeting that they were required to take rest periods. This evidence satisfied defendant's burden of production, thereby shifting the burden of production to plaintiff.
Plaintiff failed to meet his burden. Plaintiff stated in a declaration: "I rarely if ever took timely rest breaks, that is a ten (10) minute break during the middle of any four (4) hour shift. As [an] hourly Bench Property Manager employee I was generally the manager on duty and could not take breaks." We agree with the trial court that "[t]his is not an unequivocal statement that he was not authorized or permitted to take a ten-minute break every four hours."
(7) Moreover, plaintiff's statement that he "could not" take rest breaks is a conclusory allegation and does not raise a triable issue of material fact. Plaintiff did not set forth any facts indicating that as a practical matter, he could not take rest breaks. Instead, he simply alleged that he "could not" do so, without describing any factual basis for this allegation. The closest plaintiff came was his statement that "[a]s a Bench Property Manager, I was required to be on the property at all times during my shift." An employer's requirement that an employee be "on the property" at all times, however, does not necessarily prohibit rest periods. Indeed, in many employment settings, there is no practical way for an employee to take a 10-minute rest period without staying on the property. Plaintiff therefore failed to raise a triable issue of material fact with respect to his rest period cause of action. (See Toigo v. Town of Ross (1998) 70 Cal.App.4th 309, 329 [82 Cal.Rptr.2d 649].)

*1291 DISPOSITION
The order granting defendant summary adjudication of plaintiff's third, fifth, and sixth causes of action is affirmed. Defendant is awarded costs on appeal.
Croskey, Acting P. J., and Aldrich, J., concurred.
NOTES
[1] All further statutory references will be to the Labor Code unless otherwise stated.
[2] The trial court properly sustained defendant's objections to purported pay stubs and timecards submitted by plaintiff because these documents were not authenticated by a witness with personal knowledge about them. Defendant also submitted several of plaintiff's pay stubs and timecards into evidence, which can be considered by this court. Plaintiff failed to provide any admissible evidence regarding subclass members' pay stubs.
[3] This is an appealable order because it terminated all claims on behalf of the pay stub and meal time subclasses. (See Justus v. Atchison (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122].)
[4] Defendant contends that associated mileage payments were reimbursement of expenses and not wages. Plaintiff contends that associated mileage payments were wages. We do not need to address this issue because we are affirming the trial court's ruling on plaintiff's third cause of action on other grounds.
[5] In Cicairos, White and Brown, the courts reviewed different wage orders than Wage Order No. 4-2001, but the applicable provisions of those wage orders regarding meal periods were materially the same. (Cf. Cal. Code Regs., tit. 8, § 11040, subd. 11; Cal. Code Regs., tit. 8, § 11070, subd. 11; Cal. Code Regs., tit. 8, § 11090, subd. 11.)
[6] Section 226.7, subdivision (b) provides: "If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."